UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
MIGUEL SMITH

                     Plaintiff,                               **COMPLAINT**

       -against-                                      **Jury Demand**

THE CITY OF NEW YORK; HORIZON JUVENILE
CENTER OF THE CITY OF NEW YORK,
ADMINISTRATION FOR CHILDREN SERVICES;
ACS COMMISSIONERS JOHN MATTINGLY,
RONALD RICHTER, and GLADYS CARRION;
DONNA LOCKE, FELIPE FRANCO;
TOUR COMMANDERS IKE AHANEKU and KEVIN
PATTERSON;
SUPERVISORS KIM TAYLOR, TAHIA DENNIS,
STEPHEN HILL, JOHN ALADENIYI;
JUVENILE COUNSELORS NATALIE MEDFORD,
MICHELLE HALL, "JANE" MARTIN,
KAMEL BRANHAM, and SAM POWELL,

                         Defendants.
-----------------------------------------------------------------------x

## PRELIMINARY STATEMENT

    1.    Plaintiff MIGUEL SMITH ("MIGUEL") was repeatedly raped by a guard beginning when he was only 15 years old.

    2.    MIGUEL's rape was inevitable because of the environment cultivated by the Defendants' actions and inactions. Defendants go to great lengths to hide their misconduct and destroy evidence. *See Exhibit 1*.

    3.    The manner in which plaintiff was assaulted, groomed, threatened and eventually raped is similar to the allegations made in *Maldonado v. The City of New York, et al.*, 17 CV 6618 (AJN) (OTW) ("*Maldonado*").  *See Exhibit 2*.

1. Plaintiff MIGUEL SMITH ("MIGUEL") was repeatedly raped by a guard beginning when he was only 15 years old.

2. MIGUEL's rape was inevitable because of the environment cultivated by the Defendants' actions and inactions. Defendants go to great lengths to hide their misconduct and destroy evidence. *See Exhibit 1*.

3. The manner in which plaintiff was assaulted, groomed, threatened and eventually raped is similar to the allegations made in Maldonado v. The City of New York, et al., 17 CV 6618 (AJN) (OTW) ("*Maldonado*").  *See Exhibit 2*.

4. Plaintiff, through his lawyers, seeks compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, as secured by statutes and the Constitution of the United States.

## JURISDICTION

5. The action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution.

6. Jurisdiction is found upon 28 U.S.C. §§1331 and 1343.

## VENUE

7.  Venue is properly laid in the Southern District of New York under 28 U.S.C. § 1391(b), in that it is the District in which the claims arose.

## JURY DEMAND

8. Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38 (b).

## PARTIES

9.       Plaintiff at all relevant times was a resident of the County of Bronx and CITY and State of New York.

10.       Defendant CITY of New York (hereinafter "CITY") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York. Defendants HORIZON Juvenile Center located at 560 Brook Avenue, Bronx, New York 10455 ("HORIZON") and Administration of Children Services ("ACS") are entities who operate under the auspices of defendant CITY.

11.       Defendants JOHN MATTINGLY ("MATTINGLY"), RONALD RICHTER ("RICHTER") and GLADYS CARRION ("CARRION") were the Commissioners for the ACS when Plaintiff's constitutional rights were violated. As the Commissioners of ACS; MATTINGLY, RICHTER and CARRION were responsible for the protection and safety and well-being of CITY's children by providing juvenile justice services at HORIZON. MATTINGLY, RICHTER and CARRION were also responsible for the management and funding of HORIZON which was a detention facility for juveniles and support services of these juveniles (some as young as 10 years old) and their families. They are sued in their individual capacities.

12.       Defendants DONNA LOCKE ("LOCKE"), and FELIPE FRANCO ("FRANCO") are or were Deputy Commissioners at ACS.

13.       Defendants IKE AHANEKU ("AHANEKU") and KEVIN PATTERSON ("PATTERSON"), are or were employed by the CITY through HORIZON and ACS as Tour Commanders and acted under the color of state law and are sued in their individual capacities.

14.       Defendants KIM TAYLOR ("TAYLOR"), TAHIA DENNIS ("DENNIS"), STEPHEN HILL ("HILL"), and JOHN ALADENIYI ("ALADENIYI"), are or were employed by

the CITY through HORIZON and ACS as Supervisors and acted under the color of state law and are sued in their individual capacities.

15.     Defendants NATALIE MEDFORD ("MEDFORD"), MICHELLE HALL ("HALL"), "JANE" MARTIN ("MARTIN"), KAMEL BRANHAM ("BRANHAM"), and SAM POWELL ("POWELL") are or were employed by the CITY through HORIZON and ACS and acted under the color of state law and are sued in their individual capacities.

## FACTS

16.     Plaintiff incorporates the factual allegations as outlined in *Exhibits 1 and 2*.

17.     MIGUEL arrived at HORIZON on or about May 2013 when he was approximately 15 years old.

18.     MIGUEL would constantly get in trouble with other juvenile detainees.

19.     To curb trouble amongst juveniles, AHANEKU, ALADENIYI, HILL and BRANHAM would use physical and excessive force against the detainees including MIGUEL.

20.     These defendants would punch MIGUEL in the stomach, bend and twist his arms, violently restrain him and then deny him medical attention.

21.     They would threaten MIGUEL that "real gangsters don't snitch or go to medical." They would discourage juveniles like MIGUEL from seeking medical attention.

22.     The defendants would also tell MIGUEL that if he ever "snitched," they would make life miserable for him.

23.     Defendants would routinely tell other juvenile detainees that MIGUEL was snitching on them and was causing problems and defendants would take away X-box and other entertainment from the detainees and defendants would blame it on detainees like MIGUEL (who complained).  The other juvenile detainees would then take their anger out on the detainees who

bravely voiced complaints, by assaulting them and being the "arms of the guards" who the complaints were lodged against.

24.     After defendants had "broken" MIGUEL, they would have their way with him.

25.     One day after MIGUEL had already been at HORIZON for several months, he came out of his room and was met with MEDFORD.

26.     MEDFORD invited MIGUEL into her office where there was a small desk and cabinet. MEDFORD's office was in E-Hall.

27.     MIGUEL was only wearing a bathrobe and shorts. MEDFORD started rubbing against MIGUEL's penis and he became aroused. MIGUEL was afraid but could not say anything. It appeared that MEDFORD was "testing" him to see whether he would yell or scream or report her because of the inappropriate sexual touching.  This happened on more than one occasion until MEDFORD realized that MIGUEL would not complain.

28.     MEDFORD told him "not to worry" and "don't be nervous because no one is here." MEDFORD then proceeded to perform oral sex on MIGUEL.  After she was finished, she would tell MIGUEL "We can do this all the time," and that if he ever told anyone "no one would believe you" and "I can get you in trouble with the other detainees."  This was MEDFORD's *modus operandi* ("M.O.") and all the individual defendants were aware of it.

29.     The first time MIGUEL had sexual intercourse with MEDFORD was soon after his birthday. MEDFORD had made a t-shirt for his 16th birthday. In total, MEDFORD raped MIGUEL a total of 8-12 times during his stay at HORIZON.  On several occasions, DENNIS and BRANHAM would stand guard to make sure the misconduct went undiscovered.

30.     Individual defendants TAYLOR, DENNIS, HILL, ALADENIYI, MEDFORD, HALL, MARTIN, BRANHAM and POWELL's (who were Juvenile Counselors and Supervisors)

duties at HORIZON included but were not limited to counseling plaintiff and other juveniles similarly situated so as to help them with their future goals and guide them towards a productive life outside of the penal system.

31.     MIGUEL and other juvenile inmates looked to the individual defendants identified in the foregoing paragraphs for guidance as well as being their caretaker and as such placed their trust in them.

32.     Defendant CITY employed these defendants to counsel plaintiff and other juvenile detainees and develop a good relationship with them.

33.     In establishing trust and gaining their confidence, these defendants groomed plaintiff and other juveniles similarly situated for the purpose of gratifying their own sexual needs and desire.  In their respective positions, as "guards" and an "outlet" to the outside world, these defendants used control mechanisms over the plaintiff and other juveniles.

34.     Defendants AHANEKU, PATTERSON, HILL, HALL, MEDFORD, POWELL, MARTIN, BRANHAM and DENNIS would purchase alcohol, food and cigarettes and smuggle in disposable cell phones and drugs ("K2") and give them to juvenile detainees as part of their "grooming" process. They would also purchase food for plaintiff and other juvenile inmates from fast-food establishments that were located nearby.  They would then bring in this food and reward those inmates that were willing to "play ball."  Defendants would also smuggle in liquor (most of the times Hennessey and Cîroc vodka) mostly into water-bottles and Arizona ice-tea bottles so they were not visible from outside HORIZON.  However, once they entered HORIZON, the Defendant Tour Commanders and Defendant Supervisors would laugh about it because they knew what was contained in the water-bottles and iced-tea bottles. They would also sneak in "blue pills" called "perks" to get detainees high.

37.     Plaintiff and other juvenile detainees were then encouraged to partake in becoming intoxicated and inebriated or under the influence and were then physically, sexually and mentally abused by the defendants.   Defendants AHANEKU, PATTERSON, DENNIS, LOCKE, and TAYLOR were all aware of this because not only did they take part in these activities but told MIGUEL that the other HORIZON employees regularly engaged in this type of conduct and "if [plaintiff] did not like it, [he] should just look the other way." The defendants followed similar and disturbing patterns they controlled and groomed the detainees:

a. They would buy them gifts and give them special privileges.

b. They would threaten them with retaliation to silence them.

c. They would have the keys to the entire HORIZON facility leading the juvenile rape victims to believe that they had "clout and power."

d. They would greet the detainee's family and tell them that the rape victim was "like a son" to them and they were like "a parent to them."

e. They would encourage other staff to partake in special treatment/retaliation of rape victims.

f. They would visit the rape victim's home and carry back photographs and money directly to the victim that was not otherwise permitted.

**When defendants would discover that their conduct was being investigated, they would endeavor to destroy, cell phones, photographs, letters, files and everything and anything that would implicate them**. *See Exhibit 1.*

## AS AND FOR A FIRST CAUSE OF ACTION
(Fourth Amendment-Unreasonable Seizure/Excessive Use of Force)

38.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

39.     Defendants MARTIN and MEDFORD used and abused MIGUEL for their own personal sexual gratifications.

40.     Defendant MARTIN would kiss MIGUEL in a sexually suggestive manner, propositioned him into sexual encounters.

41.     Defendant MARTIN would regularly tell MIGUEL to show her his genitals and that if it was big enough, she would perform oral sex on him.

42.     Defendant MEDFORD also preyed on MIGUEL as outlined earlier.

43.     After the sexual encounters were completed, MIGUEL was permitted to leave MEDFORD's office, where he would routinely encounter the other defendants, who would tell him "good job" and that MIGUEL was a "special kid."  This was also their M.O.

44.     MIGUEL was raped by defendant MEDFORD on at least eight to ten occasions. MEDFORD also forced plaintiff to have unprotected sex with her.

45.     Defendant MEDFORD had the intent to abuse MIGUEL because she took measures to ensure that plaintiff was supplied alcohol and drugs and made sure that she and plaintiff had a private room or area when MEDFORD wished to engage in sexual contact. DENNIS and BRANHAM ensured privacy.

46.     When MIGUEL started talking to other juvenile females using "kites," MEDFORD would get jealous, summon MIGUEL into her office and start crying and would say "I am sick and I am not going to live long." MEDFORD would prey on minor detainees like MIGUEL's emotions and tender age.

47.     MEDFORD would also say that the "young girls are dirty" and that if MIGUEL did not stop talking to them and stopped having sex with her, she would get her "crew" to retaliate against MIGUEL and make his life miserable at HORIZON.

48.     Defendants DENNIS, BRANHAM, MARTIN and MEDFORD's conduct was serious and served no penological or any lawful or governmental purpose and was done solely to gratify their perverse sexual desires and to dominate and abuse MIGUEL with their powers as penal custodians.

49.     As a result of the foregoing MIGUEL's right to be free from excessive force and unreasonable seizure under the Fourth Amendment, as incorporated into the Due Process Clause of the Fourteenth Amendment, was violated and he suffered and continues to suffer injuries as pronounced towards the end of this complaint.

## AS AND FOR A SECOND CAUSE OF ACTION
(Fourteenth Amendment- Substantive Due Process)

50.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51.     The Defendants' identified herein and their conduct was a gross abuse of executive power so clearly unjustified by any legitimate objective of governmental enforcement that it deprived MIGUEL of his dignity and bodily integrity.

52.     Defendants' conduct deprived MIGUEL stripped him of the liberty interest as afforded by the Due Process Clause of the Fourteenth Amendment.

53.     As a result of the foregoing, Plaintiff was deprived of his liberty interests and right to substantive due process as pronounced towards the end of this complaint.

## AS AND FOR A THIRD CAUSE OF ACTION
(First Amendment-Retaliation and Denial of Right to Access the Courts)

54.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.    At the time of the incidents described in this complaint, MIGUEL was a minor and his age ranged from 15-16 years old at HORIZON.

56.    MIGUEL did not want to have any sexual contact with MEDFORD.

57.    MIGUEL told MEDFORD that he did not want to engage in such conduct and did not want to be plied with alcohol, drugs and other "special" benefits.

58.    In 2014, after MIGUEL informed defendant MEDFORD that he no longer wanted to engage in inappropriate relationships with them, these defendants and the other named defendants retaliated against him. The Tour Commanders, Supervisors and Juvenile Counselors started falsifying reports that plaintiff had broken rules and regulations inside HORIZON and would write him up for infractions. These defendants also told other detainees that MIGUEL was responsible for their "X-Box" and other privileges been taken away from them and it would result in detainees like MIGUEL being assaulted and punished as "arm of the guards."

59.    When plaintiff went to PATTERSON, AHANEKU, TAYLOR, DENNIS, ALADENIYI, HALL, BRANHAM, HILL and POWELL, they ignored his complaints and told him to "just deal with it because it happens all the time."  When plaintiff persisted that he was being abused, these defendants also retaliated against him by charging him with infractions and by also taking away the benefits that he enjoyed such as using employees' cell phones to make personal phone calls, smoke marijuana, obtain food from fast-food restuarants, watch movies, given candy and other items.

60.     MIGUEL's complaint/grievance to the Defendants were protected speech under the First Amendment, as incorporated in the Due Process Clause of the Fourteenth Amendment.

61.     Defendants also actively engaged in obstruction of justice and to deny plaintiff access to the Courts by destroying evidence to cover their misconduct.  Defendant DENNIS would hide evidence implicating her and the staff at HORIZON if an outside agency such as the Department of Investigation ("DOI") followed up on a complaint.  DENNIS would ensure that her and her sub-ordinates would conceal incriminating videos, photographs, contraband phones and other items to hide the unlawful activities taking place at HORIZON.  In fact, after the *Maldonado* case was filed in September 2017, defendant DENNIS and LOCKE sent out an email directing employees to destroy all evidence and files.  *See Exhibit 1.*

62.     Defendants through retaliation and concealing their unlawful conduct violated MIGUEL's rights secured under the First Amendment rights and as pronounced towards the end of this complaint.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Denial of Equal Protection-Gender Based Discrimination)

63.     Plaintiff repeats, reiterates and realleges each and every allegation  contained     in the foregoing paragraphs as if fully set forth herein.

64.     At all times described in the complaint, plaintiff was a male juvenile who was a detainee at HORIZON.

65.     Plaintiff was sexually assaulted by MARTIN and MEDFORD because of his gender.  Plaintiff was physically assaulted by AHANEKU, HILL, ALADENIYI, and BRANHAM because of his gender.

66.     Defendants discriminated against MIGUEL if he refused sexual advances of the female employees at HORIZON.

67.     Defendants denied plaintiff the Equal Protection of the Law under the Fourteenth Amendment because of his gender.

68.     As a result, plaintiff suffered psychological and physical injuries as pronounced towards the end of this complaint.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Municipal Liability-*Monell*)

69.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70.     There was widespread custom and practice of sexual encounters and other misconduct between the detainees and HORIZON employees, destroying evidence, retaliation against employees and detainees who voiced their concerns and rewards for employees and other juvenile detainees who took part in the wrongful conduct or simply turned a "blind eye" and "looked the other way" because it "happened all the time" and evidenced by the following:

(a) Defendant MEDFORD had keys to every door and access to the entire HORIZON facility. MEDFORD raped many juvenile detainees.  MEDFORD, HALL, DENNIS, BRANHAM, MARTIN and other defendants would bring contraband (including "perks", K-2 and alcohol) from outside and rewarded detainees with such contraband in return for engaging in sexual conduct and "playing ball". The detainees who were so rewarded succumbed to the predatory sexual demands of the defendants. On many occasions, defendants DENNIS and BRANHAM stood guard and looked the other way while the rape was taking place.

(b) MEDFORD engaged in numerous instances of sexual intercourse with other minors and facilitated sexual encounters between other minors as a reward.

(c) Defendant BRANHAM is/was a juvenile counselor at HORIZON. Employees at HORIZON made numerous complaints to their superiors about BRANHAM's inappropriate and unlawful conduct with minor female detainees. As far back as 2008, BRANHAM's misconduct of having sex with female detainees was reported to the supervisors; however, he was never disciplined. On many occasions, BRANHAM would bring in alcohol and tobacco and other illicit drugs (K-2 and "perks") to allow detainees (some as young as 13) to smoke and drink on his watch. There was no policy in place to prevent individual like BRANHAM to be separate and alone from female detainees without supervision or video monitoring to prevent nefarious activities between staff and detainees from taking place.

(e) Defendant POWELL is/was a juvenile counselor at HORIZON. During the period of 2008-2012, POWELL was fully aware of the misconduct taking place at HORIZON but failed to take any action. POWELL witnessed MEDFORD having sexual intercourse with R.F. POWELL failed to report said incident.

(f) Defendant MARTIN would routinely proposition plaintiff and other male juveniles to show her their male genitalia and would always say that "if [the penis] was big enough, [she] would give the [detainee] oral sex in front of others." MARTIN on more than one occasion engaged in this type of sexual contact with male detainees and also indulged in alcohol during her work-shift.

(g) Defendant HALL, DENNIS, POWELL, BRANHAM would bring illegal drugs and other contraband into HORIZON and would appear intoxicated while on duty. From at least 2008 through 2016, HALL permitted juvenile detainees, in the area where she supervised, to ingest and become "high" on marijuana, K2 and "perks" and alcohol

and tobacco which defendants brought inside of HORIZON.

(h) When an employee would report to supervisors about HALL, MEDFORD, MARTIN being intoxicated and high, and fraternizing with male detainees without any supervision or monitoring, the employee was told to "look the other way" and when the employee voiced concerns about it, the employee was retaliated by being ostracized and treated like a pariah after the Supervisors told HALL, MEDFORD, MARTIN that employee(s) were complaining about her wrongful conduct.

(i) Another employee filed formal complaints about the co-mingling of juvenile counselors with inmates of the opposite sex as far back as 2010. When his complaints went nowhere, he filed a complaint with the NYC DOI in 2013. The failure to rectify the situation complained of resulted in the violation of plaintiff's rights.

(j) Defendant ALADENIYI was aware of the situation at HORIZON but failed to do anything about it. When employees would come to him and voice concerns, he refused to take any actions (by reporting the misconduct or contacting law enforcement authorities) and simply stated that he "did not want to get involved" and "this was business as usual."

(k) Defendant TAYLOR was a supervisor at HORIZON.  Her supervisors and other employees would see her drink alcoholic beverages while on duty and observed her working when she was visibly intoxicated. Upon information and belief, defendant TAYLOR became impregnated by one of the male detainee from HORIZON after an extended sexual relationship with the detainee.

(l) Defendant AHANEKU previously worked at BRIDGES JUVENILE CENTER ("BRIDGES"). AHANEKU was once demoted at BRIDGES for engaging in similar conduct of ignoring misconduct by fellow employees who engaged in sexual abuse of

detainees and physical and mental abuse of detainees by the BRIDGES's employees. Nevertheless, he was re-hired at HORIZON when BRIDGES closed because he ignored the wrongdoings of his fellow employees and did not voice his concerns about the misconduct and the ensuing cover-up.  AHANEKU's conduct did not change at HORIZON and he continued to turn a blind eye to the sexual, physical and mental abuse of juvenile detainees by HORIZON employees.  He would ignore improper conduct and threatened employees that unless "[they] had tangible proof other than [their] own observations", they must not report any misconduct by other employees at "roll-call."

(m) Defendants PATTERSON and DENNIS would similarly warn employees to not bring up complaints unless they had proof (aside from their own observations) at "roll-call" before shifts.

(n) Defendant HILL was also accused of misconduct at BRIDGES. He was, nonetheless, hired at HORIZON. HILL would also come to work visibly intoxicated and under the influence of drugs and failed to curb the misconduct that was taking place right before him.

 (o) Defendants DENNIS, LOCKE, MATTINGLY, RICHTER and CARRION were aware of these incidents or should have been aware of this widespread custom and practice existed as outlined in the foregoing paragraphs but failed to take any corrective actions, resulting in a defacto policy that the misconduct could be tolerated or otherwise swept under the rug or ignored and any evidence destroyed.

71.     Defendants CITY, MATTINGLY, RICHTER and CARRION failed to adequately train and Defendants AHANEKU, PATTERSON, DENNIS, HILL, TAYLOR, ALADENIYI, FRANCO, LOCKE and HALL failed to supervise the HORIZON employees, as evidenced below:

(a) The conduct outlined in this complaint constituted a pattern and custom that has existed at HORIZON for more than a decade.

(b) The numerous allegations of employee misconduct, widespread instances of HORIZON employees and detainees' sexual relationship, retaliation for reporting the misconduct and the ensuing cover-up and/or indiscretions put defendant CITY on notice of the conditions at HORIZON. However, the CITY, MATTINGLY, RICHTER, CARRION or any other City official failed to do anything about it.

(c) Defendants CITY, MATTINGLY, RICHTER, CARRION or any other City official failed to implement training procedures for the staff at HORIZON to ensure that the employees not engage in unconstitutional conduct as alleged in the complaint.

(d) The only training that was provided to the staff at HORIZON, during the time plaintiff and other juveniles were been sexually exploited, was in form of how to physically "restrain" minors. There was no formal training on how to deal with minors who are often from broken homes and vulnerable to become prey to individuals like the defendants. Nor were there any instructions on "non-touching," fraternizing with juvenile detainees of the opposite sex, or on what to do if employees came across or observed any misconduct.

(e) Defendant CITY failed to offer any training to the HORIZON staff about how to interact with juveniles who have troubled backgrounds and vulnerable and how not to exploit those vulnerabilities.

(f) Given the known frequency of the staff on juvenile assaults and indiscretions taking place between HORIZON staff with male and female detainees and also between male and female detainees at HORIZON, defendant CITY should have had some form of training in place for the employees to handle a situation involving sexual and predatory conduct by

HORIZON employees upon juvenile detainees. There was no training about what to do and how to do it if an employee witnessed or knew about any of the incidents as alleged in the complaint.

(g) Defendant Supervisors had a duty to curtail the widespread abuse of alcohol, drugs and infiltration of contraband inside HORIZON but failed to take any corrective measures.

(f) Given the known frequency of the staff on juvenile assaults and indiscretions taking place between HORIZON staff with male and female detainees and also between male and female detainees at HORIZON, defendant CITY should have had some form of training in place for the employees to handle a situation involving sexual and predatory conduct by HORIZON employees upon juvenile detainees. There was no training about what to do and how to do it if an employee witnessed or knew about any of the incidents as alleged in the complaint.

(g) Defendant Supervisors had a duty to supervise their subordinates and

ensure that nothing nefarious or untoward behavior or actions were taking place at

HORIZON.

(h) However, these supervisors turned a blind-eye and failed to remedy the misconduct and instead not only participated in the unlawful acts but threatened detainees and fellow employees with retaliation and actually retaliated if they brought up these complaints.

(i) Had the supervisors simply performed their duties and not engage in misconduct themselves, they would not have caused the deprivation of constitutional rights as suffered by plaintiff and as alleged in this complaint.

(j) The above stated gross negligence and indifference by the supervisors at HORIZON created an atmosphere that permitted malfeasance amongst employees, low morale for

conscientious employees and cultivated a culture where wrongdoers got away unpunished and the conscientious employees and vulnerable detainees were either punished or suffered further retaliation.

(k) The supervisors' deliberate indifference in supervising their employees resulted in violation of plaintiff's rights and he suffered injuries.

(j) There were no clearly posted signs that would encourage employees to speak out or discourage employees from engaging in misconduct.

(j) Because of the lack of training on the law through employee handbooks, memos, pamphlets, videos, field-training, courses and other training materials, the CITY, MATTINGLY, RICHTER, and CARRION were deliberately indifferent to the "highly predictable consequence," namely, violations of constitutional rights of individuals like plaintiff.  If the employees had been adequately trained to refrain from engaging in conduct of sexual nature or not to retaliate against employees and detainees who complained and had there been adequate training for the employees and the supervisors, plaintiff would not have suffered constitutional injuries.

72.    Defendant City failed to adopt formal complaint procedures and the lack of adoption or implementation of implementation of a complaint/grievance or preservation of evidence procedure when such implementation had been clearly warranted as evidenced below:

(a) The CITY, MATTINGLY, RICHTER, LOCKE and CARRION were aware that employees at HORIZON would encounter potential situations such as sexual encounters between employees and detainees, retaliation against employees or detainees who failed to capitulate or complained and would be forced to make difficult decisions as to whether

to report the misconduct. However, even though the CITY was aware that such an encounter or situation would be faced by a HORIZON employee, the CITY failed to set measures into place to avoid wrongful choice/conduct by the employee that would lead to the violation of the constitutional rights of individuals like plaintiff.

(b) This lack of accountability further empowered the individual defendants to continue to engage in unlawful conduct knowing that they would walk away with impunity while at the same time causing constitutional injuries to individuals like plaintiff.

(c) The CITY, MATTINGLY, RICHTER, LOCKE and CARRION were aware or should have been aware that the potential abuse in its jail system was ongoing and juvenile detainees were among the most vulnerable and that there was a need for the CITY to set up programs so that detainees (especially juveniles) have an opportunity to make a complaint against the custodians who have power and control over them.

(d)  These defendants were fully aware of the destruction of key evidence that would shed a light on misconduct by HORIZON employees but yet failed to do anything and demoralized other conscientious employees.

The CITY failed to enact any of such programs or policies and as a result, individuals like plaintiff or innocent employees' complaints were unheard and detainees continued to suffer harm.

73.     Due to the foregoing, plaintiff suffered constitutional injuries.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Liability of Supervisors)

74.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75.     Defendants FRANCO and LOCKE were Deputy Commissioners ("D.C.") at ACS. Defendants AHANEKU, PATTERSON were Tour Commanders ("T.C.") and Defendants TAYLOR, DENNIS, HILL and ALADENIYI were Supervisors ("SUPER.") employed by defendant CITY at all times alleged in the complaint. As such, the T.C. and SUPER. were responsible for the supervision of Juvenile Counselor defendants MEDFORD, HALL, MARTIN, BRANHAM and POWELL at HORIZON ("SUBORD."). Defendants T.C., SUB-ORD. and SUPER. would tell MIGUEL that the conduct was "business as usual," "it happens all the time" and "no one will believe you" made it more likely that the conduct would continue.

76.     Defendants D.C., T.C. and SUPER. were aware of the violations of plaintiff and other juvenile detainee's constitutional rights but they failed to prevent the misconduct and therefore participated in violating plaintiff's constitutional rights by being deliberately indifferent to plaintiff's safety, well-being and by not preventing defendants SUB-ORD. from preying upon and sexually assaulting juveniles like plaintiff. Instead the T.C. and SUPER. all retaliated against MIGUEL when he refused the SUBORD.'s advances or try to air his grievances and also actively participated in destruction of evidence.

77.     As a result of the foregoing, defendant Supervisors are liable for plaintiff's constitutional injuries as pronounced towards the end of this complaint.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Conspiracy pursuant to 42 U.S.C. 1983)

78.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79.     All the individually named Defendants targeted MIGUEL and other juvenile detainees for the purpose of sexually abusing, assaulting, destroying evidence, retaliating and

exploiting them and in so doing the defendants conspired with each other to deprive plaintiff and others similarly situated of their constitutional rights and to cover up their wrongful actions.

80.     The individually named Defendants knew that plaintiff and others similarly situated were vulnerable while in the custody of HORIZON and that at such times they were susceptible to abuse by the defendants.

81.     The individual defendants conspired with one another by engaging in explicit or tacit agreement to hide and keep secret each other's misconduct.

82.     As a result, plaintiff suffered constitutional injuries as pronounced towards the end of this complaint.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
(Failure to Intervene)

83.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.     The individual Defendants who were DEPUTY COMMISSIONERS, TOUR COMMANDERs, SUPERVISORs and SUB-ORDINATEs at HORIZON where MIGUEL and other juveniles were housed, observed the continuing abuse and infiltration of contraband by the HORIZON staff on plaintiff and other juvenile inmates.

85.     AHANEKU, ALADENIYI, DENNIS, LOCKE and CLARKE observed or knew of TAYLOR, HILL, MEDFORD, HALL, MARTIN and BRANHAM engage in wrongful conduct of bringing in contraband inside HORIZON, having sexual relationship with juvenile detainees, come to work intoxicated or under the influence and had an affirmative duty and opportunity to intervene in an effort to protect plaintiff and other juveniles from violations of their constitutional rights and injuries to their body and mind as detailed in the foregoing paragraphs. However, these defendants failed to do anything.

86.    BRANHAM, DENNIS, HALL, and POWELL observed MEDFORD engaging in sexual relations with other juvenile detainees.  They had an affirmative duty and an opportunity to intervene but failed to do so.   Instead, they either destroyed evidence, continued to supply contraband or used physical and verbal threats to silence the victim.

87.    As a result, plaintiff continued to suffer constitutional injuries as described in the foregoing paragraphs on the complaint and as pronounced below:

**INJURIES**:

89.    In addition to the violation of his constitutional rights:

(a) MIGUEL has been seriously traumatized from the foregoing abuse while he was at a tender age and unable to discern between "right" and "wrong." He is troubled, shocked and in disbelief and has had difficulty sleeping, is emotionally unbalanced and continues to have a lack of trust in authoritative figures and/or Elders.

(b) MIGUEL's abuse during his tender years has led to broken relationships and unable to trust his own judgment on what constitutes the correct way and manner to lead his life.

(c) MIGUEL was further transformed into a delinquent because he was actively recruited by the individual defendants and told to by actively recruiting him to engage in unlawful and immoral conduct.

(d) MIGUEL had to endure unwanted sexual assaults and was frightened about being infected with any Sexually Transmitted Diseases for being forced to have unprotected sex and seeing defendants having unprotected sex with other juvenile detainees.

(e) MIGUEL was confused, humiliated and did not comprehend the import of the predatory conduct inflicted upon him by the defendants upon his mental and physical health.

(f) MIGUEL at the tender age was unable to consent or restrain the conduct by the defendants and felt as if this was normal course of behavior even though it was clearly not.

(g) MIGUEL was further frustrated when he attempted to complaint but faced back-lash and or retribution/retaliation for doing so.

(h) MIGUEL further questioned his manhood and whether refusing to consent to sex was inconsistent with what societies norms require of his gender.

The foregoing left MIGUEL suffering from unnecessary severe physical harm, and severe permanent emotional injuries and scars.

**WHEREFORE**, the Plaintiff requests that this Court:

    a.   Award compensatory damages to each Plaintiff against the Defendants, jointly and severally, in the amount determined by the jury to be appropriate for the compensation to plaintiff for his injuries for each cause of action;

    b.   Award the costs and expenses of this action to the Plaintiff;

    c.   Award reasonable attorneys fee to the Plaintiff under 42 U.S.C. Section 1988 and/or any other applicable laws;

    d.   Award punitive damages in an amount determined by the jury against individual defendants LOCKE, BRANHAM, DENNIS, HILL, HALL, MARTIN, MEDFORD and POWELL;

    e.   Award such other and further relief as this Court may deem appropriate.

Dated: New York, New York
       May 20, 2018

                           PAWAR LAW GROUP P.C.
                           20 Vesey Street, Suite 1210
                           New York, New York 10007
                           (212) 571-0805

                           By: /sVik Pawar
                           Vik Pawar (VP9101)
                           Robert Blossner (RB0526)
                           *Attorneys for Plaintiff*